IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK M. GEBOY,

                Plaintiff,

      v.

ONEIDA COUNTY, ONEIDA COUNTY
SHERIFF'S OFFICE, STETSON GRANT,
CHRISTOPHER CONIGLIO, TIMOTHY JOHNSON,
MICHAEL BARAN AND NETWORK HEALTH PLAN,

                Defendants.

OPINION AND ORDER

19-cv-574-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Mark Geboy contends that Oneida County sheriff's deputies used unreasonable force in the course of his arrest on July 8, 2018, in violation of his Fourth Amendment rights and state negligence and battery law.  Before the court is a motion for summary judgment filed by defendants Oneida County, Oneida County Sheriff's Office, Stetson Grant, Christopher Coniglio, Timothy Johnson and Michael Baran, in which they argue that plaintiff's federal claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994); plaintiff has insufficient evidence to support any of his claims or his request for punitive damages; and defendants are entitled to qualified and discretionary immunity.  Dkt. #46.

For the reasons below, I will grant defendants' motion with respect to plaintiff's federal and state law battery claims against Oneida County and Oneida County Sheriff's Office.  However, defendants' motion will be denied in all other respects.  I conclude that Heck does not bar plaintiff's § 1983 claims and that there are genuine issues of material fact precluding summary judgment as to plaintiff's excessive force, negligence, battery, and

1

punitive damages claims against the officer defendants and as to plaintiff's claim that the county is vicariously liable for the officers' negligence.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A. Response to 911 Call

On July 8, 2018, at approximately 12:05 a.m., defendant Oneida County Sheriff's Office responded to a 911 call from a resident in Rhinelander, Wisconsin. The caller reported to dispatch that plaintiff Mark M. Geboy, a resident in her home, was highly intoxicated and yelling at other residents and individuals inside the home. (Although defendants say that the caller also reported that plaintiff was threatening the other residents with physical violence, they present no evidence to support this statement.) According to plaintiff, he had gotten into an argument with one of his neighbors and an individual whom he believed to be homeless who had pitched a tent at the end of the driveway.

Defendants Timothy Johnson, Stetson Grant, Christopher Coniglio and Michael Baran, who are all deputies from the Sheriff's Office, responded to the call. The dispatcher told the officers that plaintiff's consumption of intoxicants was a violation of the terms of his probation. The caller and her boyfriend met the responding officers outside the home and told them that plaintiff had been "harassing" residents of the home. (Defendants do not propose any findings of fact explaining how plaintiff was harassing others.) The caller and

her boyfriend also told the officers that plaintiff was still inside the home, in an upstairs common area, and was dressed in a sweatshirt and shorts.  The officers believed they had probable cause to arrest plaintiff for disorderly conduct and probation violations.

Plaintiff admits that he was prohibited from consuming intoxicants as a condition of his probation, that the officers were called to his residence in response to a verbal altercation he had with one of the other residents of the home' and that the officers did not search his residence.

## B.  Plaintiff's Arrest

In order to effect the arrest, the defendant officers knocked on the door of the home. The owner of the home answered the door and allowed the officers to enter.  The home did not have separate residential units; its layout was a labyrinth of hallways, bedrooms and shared spaces.  Because of the home's unusual floor plan, defendants Grant, Johnson and Baran were concerned for their own safety as well as for the safety of others who were present inside the home.  (Contrary to defendants' assertion, defendant Coniglio did not discuss safety concerns related to the floor plan in his declaration.)  After clearing several rooms, Johnson located plaintiff sitting in a chair in one of the upstairs common areas of the home.  Plaintiff was alone and smoking a cigarette.

Upon making contact with plaintiff, defendant Johnson identified himself as an Oneida County Sheriff's deputy and instructed plaintiff to show him his hands.  Plaintiff refused.  Johnson observed that plaintiff's speech was slurred, his eyes were bloodshot and

glassy, he smelled strongly of intoxicants and he was belligerent. (Johnson does not explain what he means by belligerent. Plaintiff testified at his deposition that he was intoxicated and impaired at the time of his interaction with the officers, but that his memory and judgment were not impaired. Dkt. #61 at 91.) Plaintiff refused Johnson's instruction to get up. At some point, the other officers arrived in the room. Because plaintiff refused to submit to the arrest, Johnson removed a lit cigarette from plaintiff's left hand and with Grant's assistance, used a decentralizing tactic to bring plaintiff to his knees and then to the ground in order to place him under arrest.

On the ground, plaintiff's right arm was tucked beneath his body. Baran attempted to gain control of plaintiff's right arm, but was unable to do so. Baran and Johnson both instructed plaintiff to remove his right arm from beneath his body and ordered him to stop resisting. Plaintiff did not move his arm. (Defendants say that plaintiff had tucked his arm beneath him to avoid being handcuffed, but plaintiff says that his arm became pinned during the takedown and he could not move it with his body weight on top of it.) Baran then attempted a pain compliance technique behind plaintiff's right ear in an attempt to gain control of plaintiff's right arm and continued instructing him to stop resisting. (Defendants' proposed findings of fact do not identify what kind of "pain compliance technique" Baran used but they explain in their response to plaintiff's proposed findings of fact that Baran attempted a mandibular angle pressure point. Plaintiff says that he was punched in the back of his head twice, which defendants deny.) While Johnson was holding onto plaintiff's left wrist, plaintiff began kicking his legs. (Johnson says that plaintiff kicked him in the back,

causing him to launch forward.  Plaintiff says that he does not recall whether his "reflexive kicking" struck any of the officers.)  Johnson was able to adjust his body and place himself across the back of plaintiff's knees in order to prevent plaintiff from kicking again.

Defendants Baran and Grant continued to issue verbal commands to plaintiff to stop resisting and to put his right hand behind his back.  Plaintiff refused.  (The parties dispute what happened next, including both the amount and type of force used.  Defendants say that Grant used three focused hand strikes to plaintiff's torso, during which time plaintiff continued to resist and struggle.  Plaintiff says that he was punched as hard as possible three to five times with a closed fist, and the repeated blows caused him to convulse reflexively from the pain.)

At some point, plaintiff's right arm shot out from beneath his body toward the couch.  Defendant Johnson suspected that plaintiff may have concealed a weapon under the couch.  When Johnson attempted to assist Grant, plaintiff clenched his right fist in an attempt to pry his hand away.  Defendants Grant and Baran were able to gain control of plaintiff's right arm.  Johnson handcuffed plaintiff's hands behind his back and the officers escorted plaintiff out of the residence.  Plaintiff continued to struggle against the officers even after being handcuffed, and he berated and cursed them.  (Contrary to defendants' assertion, none of the officer defendants said in their declarations that they feared for their safety after they encountered plaintiff in the chair and took him to the ground.)

Although Grant and Coniglio drew their government-issued Tasers at different points during the incident, they did not use them on plaintiff.  None of the officers deployed a

weapon or used a baton or sidearm.

As a result of his conduct during the July 8, 2018 incident, plaintiff was charged with disorderly conduct pursuant to Wis. Stat. §947.01(1), a Class B Misdemeanor; resisting an officer pursuant to Wis. Stat. § 946.41(1), a Class A Misdemeanor; and battery to a law enforcement officer pursuant to Wis. Stat. § 940.203(2), a Class H Felony.  See Oneida County Circuit Court Case No. 18-CF-240.  On December 11, 2018, plaintiff pleaded no contest to disorderly conduct and resisting an officer.  The battery charge was dismissed.

Plaintiff admits that he was arrested for intoxication, which was a violation of his probation.  He also admits that defendants' use of force began after they attempted to place him under arrest and concluded after he had been handcuffed.


## C.  Plaintiff's Medical Treatment

Defendant Grant called an ambulance for plaintiff.  (Defendants say that Grant asked plaintiff if he needed medical attention, but plaintiff says that it was he who asked for an ambulance.)  Plaintiff was placed in the back of Johnson's squad car until the ambulance arrived.

When first responders arrived on the scene, they attempted to gather information from plaintiff regarding his medical condition but plaintiff began berating the first responders with verbal insults.  Johnson told the first responders that plaintiff had been complaining of pain on his right side.  The first responders determined that plaintiff should be transported to the hospital for a full medical workup, but they requested that a deputy

ride with them during the transport.  Coniglio accompanied plaintiff and the first responders in the ambulance to St. Mary's Hospital.  Grant also went to St. Mary's Hospital for treatment of an injury he sustained to his pinkie finger during the incident.

During plaintiff's medical workup at St. Mary's Hospital, a decision was made to transfer him to Marshfield Medical Center for further examination and treatment.  At 7:44 a.m. on July 8, 2018, plaintiff was admitted to Marshfield Medical Center for inpatient care. Plaintiff's medical record shows that he had acute alcohol intoxication, a liver laceration, right sixth through 11th rib fractures with pulmonary contusion, a right shoulder contusion, bilateral knee abrasions, a left knee contusion and elevated LFTs (liver function tests) secondary to trauma.

### D.  Defendants' Training and Related Policies

Baran, Coniglio, Grant and Johnson were trained in appropriate use of force techniques pursuant to the Defensive and Arrest Tactics manual issued by the Wisconsin Department of Justice.  Grady Hartman, the Oneida County Sheriff for the past 21 years, reviewed the officers' training records and determined that their training, including use of force and arrest tactics, was up to date as of July 8, 2018.  Baran, Coniglio, Grant and Johnson completed use of force reports, which the shift supervisor and division commander signed.

OPINION

A. <u>Heck as a Bar to § 1983 Claims</u>

Defendants contend that plaintiff cannot assert his excessive force claims because his claim that the officers were acting unlawfully, and plaintiff's statement during discovery that he did not resist the arrest imply the invalidity of his criminal conviction for resisting an officer. In support of their argument, defendants cite <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994), in which the Supreme Court held that a person convicted of a crime cannot seek damages under federal law if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."

<u>Heck</u> does not automatically bar claims that are related to conduct that led to a conviction. <u>Id.</u> at 487, n.7. Generally, a plaintiff who has been convicted of resisting arrest is not barred from maintaining a § 1983 action for excessive force stemming from the same conviction. <u>VanGilder v. Baker</u>, 435 F.3d 689, 692 (7th Cir. 2006) ("<u>Heck</u> does not automatically bar a § 1983 claim simply because the processes of the criminal justice system did not end up in the plaintiff's favor"). A court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted. <u>Id.</u> at 691.

As an initial matter, plaintiff cites <u>Hoeft v. Joanis</u>, 727 Fed. App'x 881, 882-83 (7th Cir. 2018), for the general view that <u>Heck</u> does not apply in cases in which a § 1983 plaintiff has pleaded no contest to an underlying criminal charge. I am not persuaded that the holding in that case supports plaintiff's broad interpretation. In <u>Hoeft</u>, the court of appeals found that plaintiff could sue for excessive force for the rough treatment that allegedly

8

preceded his no contest plea because his underlying burglary convictions rested on his plea of no contest and not on the creation or inadmissibility of any particular evidence. Id. (citing Mordi v. Zeigler, 870 F.3d 703, 707 (7th Cir. 2017)). The court did not hold that a no contest plea never qualifies as a conviction for purposes of Heck.

In fact, even in cases involving guilty pleas, the court of appeals has explained that if the plaintiff would not have been convicted under the version of events alleged in the plaintiff's civil suit, the plaintiff's civil suit cannot proceed. Tolliver v. City of Chicago, 820 F.3d 237, 244 (7th Cir. 2016) ("[I]f the incident unfolded as Tolliver alleges in his civil suit, then he could not have been guilty of aggravated battery of a peace officer . . . . [B]ecause the allegations he makes now necessarily imply the invalidity of his conviction, Heck bars his civil suit."). In other words, "[a]s long as [the criminal] conviction stands, [the plaintiff] is confined to a version of the facts that does not undermine the conviction." Id. at 246. See also McCann v. Neilsen, 466 F.3d 619, 621 (7th Cir. 2006) (plaintiff's claim was Heck-barred despite its theoretical compatibility with underlying conviction if specific factual allegations are necessarily inconsistent with validity of conviction). Thus, a plaintiff convicted of resisting arrest cannot maintain a § 1983 action premised on the claim that he did not resist arrest; however, he may proceed on claims that the police used excessive force in effecting his arrest. Evans v. Poskon, 603 F.3d 362, 364 (7th Cir. 2010) (allegation that police used excessive force to effect custody is "entirely consistent with a conviction for resisting arrest"); Gilbert v. Cook, 512 F.3d 899, 902 (7th Cir. 2008) ("whether the force used was reasonable is a question that may be litigated without transgressing Heck").

In this case, plaintiff pleaded no contest to resisting an officer in violation of Wis. Stat. § 946.41(1), which provides that "whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor." Defendants' primary argument is that plaintiff's claim that the officers used excessive force, which is an unlawful act, contradicts the essential element that the officers must be acting "with lawful authority." In support of their argument, defendants rely on an unpublished opinion in which the Eastern District of Wisconsin made the following statement after identifying a <u>Heck</u> problem sua sponte in ruling on a pretrial motion to exclude plaintiff's prior convictions: "[A] conviction for resisting or obstructing an officer under Wisconsin law necessarily means that the police officers' actions at the time were constitutional (which means that the officers were not using excessive force at the time)." <u>Jones v. Phillips</u>, 2017 WL 1292376, *5 (E.D. Wis. 2017). In support, the district court cited <u>State v. Ferguson</u>, 2009 WI 50, ¶ 17, 317 Wis. 2d 586, 600, 767 N.W.2d 187, 194, for the view that "lawful authority" requires that the officers' conduct be in compliance with both federal and state law. <u>Jones</u>, 2017 WL 1292376, at *5. However, the issue in <u>Ferguson</u> was whether the jury was properly instructed on the criminal jury instructions for lawful authority and exigent circumstances. <u>Ferguson</u>, 317 Wis. 2d at 592. The state supreme court was discussing "lawfulness" in the context of the officers having "had reasonable grounds (probable cause) to believe that Ferguson was committing or had committed a crime." <u>Id.</u> at 601-04. (The same is true of <u>Brunner v. McKillip</u>, 488 F. Supp. 2d 775, 784-85 (W.D. Wis. 2007) (discussing officers' lawful authority to detain plaintiff),

which defendants cite in their reply brief.)  In <u>Ferguson</u>, the state supreme court did not discuss § 1983 at all, let alone the relevance of a conviction for resisting arrest to a plaintiff's ability to bring a § 1983 claim.

Further, in <u>Jones</u>, the court found instructive the Seventh Circuit's decision in <u>Helman v. Duhaime</u>, 742 F.3d 760, 762-63 (7th Cir. 2014), that plaintiff's excessive force claim was inconsistent with his conviction for resisting law enforcement because the civil claim was based on plaintiff's contention that he did not attempt to draw his weapon until after shots were fired at him.  <u>See</u> <u>Jones</u>, 2017 WL 1292376, at *5.  In the end, the court did not rely on the alleged unlawfulness of the officers' acts, as defendants attempt to do in this case.  Instead, it held that "[i]f Jones's claim depends upon the jury concluding that he never resisted or obstructed the officers, or resisted only in response to the officers' use of excessive force, such a claim would be inconsistent with the jury's conclusion in his criminal trial and barred by <u>Heck</u>."  <u>Id.</u>  This holding is consistent with the court of appeals's instruction in <u>Tolliver</u>, <u>VanGilder</u> and <u>Evans</u> that <u>Heck</u> prevents a civil plaintiff from raising an argument in a civil rights case that challenges the evidence that was used to convict him in a criminal case.

I conclude that defendants have failed to cite persuasive or binding authority for their broad contention that a plaintiff convicted of resisting an officer cannot challenge the lawfulness of the officers' use of force because the crime of resisting an officer requires the officer to be acting "with lawful authority."  As plaintiff argues, if this court were to uphold the application of <u>Heck</u> on that ground, it would signify "that once a person resists law

enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages."  VanGilder, 435 F.3d at 692 ("Put another way, police subduing a suspect could use as much force as they wanted—and be shielded from accountability under civil law—as long as the prosecutor could get the plaintiff convicted on a charge of resisting.").

Defendants also argue that allowing plaintiff's civil case to go forward would undermine his conviction for resisting an officer because he stated in his May 11, 2020 response to defendants' request for interrogatories that he did not resist arrest.  Dkt. #57-1 at 6 ("I did not resist arrest and any use of force was unreasonable.").  Defendants also point out that plaintiff later testified at his August 19, 2020 deposition that he was not resisting arrest when he was kicking reflexively and unable to move his arm out from underneath his body weight.  Dkt. #61 at 79, 82 and 84.

Defendants are correct that plaintiff cannot base his § 1983 claim on a contention that he was not resisting the officers.  However, even though plaintiff makes a general statement in his interrogatory responses about not resisting arrest, he clarified that position in his later deposition testimony and his response to defendants' motion for summary judgment.  As defendants concede elsewhere in their brief, dkt. #47 at 7, plaintiff does not deny that he resisted the officers by failing to follow their orders to put his hands up, to get up from the chair, and to put his right hand behind his back after it was freed from underneath his body.  Plaintiff also does not dispute that he was kicking during the arrest and continued to struggle against and berate the officers after being handcuffed.

12

This type of resistence to which plaintiff admits violates § 946.41(1). See Tolliver, 820 F.3d at 242-43 (comparing elements of Tolliver's crime of conviction to his allegations in civil lawsuit). Therefore, plaintiff still could have been convicted of resisting an officer under his version of the arrest. Byrd v. Arenz, No. 17-cv-191-jdp, 2018 WL 3109079, at *4 (W.D. Wis. June 25, 2018) (finding same with respect to reckless driving conviction). Cf. Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir. 2003) (In bringing civil suit for return of gems and cash, "Okoro could have said the officers took his gems without making any claim about heroin, or he could have said that they took both the heroin and his gems, and neither of those scenarios would have implied the invalidity of his conviction. But instead he challenged the validity of the guilty verdict by denying that there were any drugs and instead arguing that he was framed."). Accordingly, I conclude that plaintiff's federal claims are not barred by Heck because they are not based on a version of events that necessarily implies the invalidity of his conviction for resisting an officer.

Although the parties have not developed the issue in their summary judgment briefing, plaintiff's contentions that he was not putting up resistence when he was kicking or failing to move his arm out from underneath him may be incompatible with the facts underlying his conviction or at least what he admitted at the plea hearing. For example, the criminal complaint in Oneida County case no. 2018CF000240 states that plaintiff failed to obey the officers' orders to show his hands and stand up, placed his right arm underneath his body after the officers took him to the ground and would not remove it, violently kicked his legs while Johnson was sitting on them, and generally resisted by tensing up. Dkt. #56-1

13

at 6, 9.  In such situations, it may be necessary to carve off any Heck-barred contentions and proceed with what remains.  Mordi, 870 F.3d at 708 ("[E]ven if Mordi filed a complaint that included some Heck-barred contentions and other cognizable arguments, we have held that the proper response is not to toss the entire complaint."); Evans, 603 F.3d at 364; Gilbert, 512 F.3d at 902.  See also Viramontes v. City of Chicago, 840 F.3d 423, 428 (7th Cir. 2016) ("To balance this tension, we held in Gilbert that the district court should implement Heck by instructing the jury that it must take as true the facts proved at the earlier criminal or disciplinary proceeding."); Driver v. Chatys, No. 15 C 4041, 2017 WL 4339819, at *6 (N.D. Ill. Sept. 29, 2017) (to extent that plaintiff may seek to dispute facts that are basis of his criminal conviction, a Gilbert instruction tailored to  underlying criminal judgment is appropriate).  However, any questions that may arise concerning these type of evidentiary issues will be addressed at or in advance of trial.

## B. § 1983 Claims Against Individual Officers

Plaintiff contends that defendants Baran, Coniglio, Grant and Johnson violated his rights under the Fourth Amendment by using excessive force on him during the course of his arrest.  Specifically, he claims that while he was lying on the floor, he was punched twice in the back of his head and then punched three to five times in his right rib cage with a closed fist, causing him serious injuries.

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard."  Plumhoff v. Rickard, 572

U.S. 765, 774 (2014).  Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  <u>Id.</u> at 396-97.  "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest."  <u>Phillips v. Community Insurance Corp.</u>, 678 F.3d 513, 519 (7th Cir. 2012).

Typically, when considering the totality of the circumstances, courts balance "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  <u>Graham</u>, 490 U.S. at 396.  Objective reasonableness does not take into account an officer's underlying intent or motivation.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  <u>Id.</u> at 397.

Defendants contend that plaintiff's excessive force claims fail because the force used against him was reasonable and applied in a good faith effort to subdue him.  <u>Stainback v. Dixon</u>, 569 F.3d 767, 772 (7th Cir. 2009) ("An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to

effectuate the arrest."). They say that plaintiff was intoxicated and belligerent, had made physical threats to others in his household, and had actively resisted arrest in a violent manner by kicking them, lying on his right arm, and reaching for what they feared could be a weapon. They argue that the initial compliance maneuver followed by focused hand strikes that they used to subdue and restrain plaintiff do not constitute excessive force under these circumstances.

However, plaintiff's version of events differs from defendants' version. Plaintiff points out that the officers set out to arrest him for being intoxicated and at the time the officers found him, he was sitting in a chair smoking a cigarette and posing no physical threat to anyone. Even though plaintiff admits that he did not comply with Johnson's order to raise his hands or get up from the chair, he says that he did not attempt to flee, was unarmed, and did not pose a threat to the officers while he was immobilized and pinned to the floor. He also says that instead of using an ear "compliance measure" or "focused hand strikes," one or more of the officers punched him twice in the back of his head and punched him very hard in the ribs with a closed fist, causing him to suffer a liver laceration, six broken ribs and a pulmonary contusion. If a jury believed plaintiff's account, it could conclude that defendants used unreasonable and excessive force against plaintiff. Therefore, defendants are not entitled to summary judgment, and plaintiff's excessive force claims must be resolved at trial. Abdullahi v. City of Madison, 423 F.3d 763, 773 (7th Cir. 2005) (reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or

judgment as a matter of law in excessive force cases should be granted sparingly.").

Defendants also argue that they are entitled to qualified immunity on plaintiff's excessive force claim.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Reichle v. Howards, 566 U.S. 658, 664 (2012); Ewell v. Toney, 853 F.3d 911, 919 (7th Cir. 2017).  Because the facts surrounding the use of force are in dispute, defendants are not entitled to summary judgment.  Abdullahi, 423 F.3d at 774-75 (when very nature of officer's conduct remains undetermined, court cannot resolve qualified immunity defense prior to trial).  When the facts are construed in the light most favorable to plaintiff, a reasonable officer would have known at the time of the incident that punching plaintiff with a closed fist in the head and torso with enough force to break his ribs and lacerate his liver was unreasonable and excessive.

## C.  § 1983 Claims against County Entities

Plaintiff asserts § 1983 claims against defendants Oneida County and Oneida County Sheriff's Office, alleging that both defendants are responsible for the acts of the officer defendants under the theory of respondeat superior and that the county has a custom of intentionally subjecting arrestees to excessive force.  Amd. Cpt., dkt. #21.  As an initial matter, plaintiff's § 1983 claims against the Oneida County Sheriff's Office will be dismissed because it is not an entity that may be sued under § 1983.  Best v. City of Portland, 554 F.3d 698, 698 n.1 (7th Cir. 2009) (police department is not a suable entity under § 1983);

Whiting v. Marathon County Sheriff's Dept., 382 F.3d 700, 704 (7th Cir. 2004) (sheriff's department is not suable entity under § 1983). In addition, as defendants point out, there is no respondeat superior or supervisor liability under § 1983, Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002); Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 615 (7th Cir. 2002), so those claims will be dismissed.

Defendant Oneida County may be liable for monetary damages under § 1983 if plaintiff can show that the officers' alleged excessive force was caused by: (1) an official policy adopted and promulgated by the entity's officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. Thomas v. Cook County Sheriff's Department, 604 F.3d 293, 303 (7th Cir. 2010) (citing Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978)). Defendants contend that plaintiff cannot prevail on a Monell claim because he fails to allege or offer evidence that a specific county policy, a widespread and well-settled practice or custom or a policymaker was the driving force behind his alleged constitutional violations. I agree with defendants.

It is well-settled that to avoid summary judgment, plaintiff "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003) (quoting Schacht v. Wisconsin Dept. of Corrections, 175 F.3d 497, 504 (7th Cir.

1999)).  Plaintiff contends that Oneida County had a custom of permitting its deputies to escalate excessively the level of force used in detaining an individual, even when the officers had control over the person being arrested, and that his injuries could have been avoided had the county properly supervised and trained the officer defendants.  But he does not propose any findings of fact in support of his Monell claims.

Plaintiff does discuss some evidence, including the April 7, 2017 detention of another individual and state training requirements, in his response brief, dkt. #67 at 11-13 (citing Todd Korb Aff., dkt. #70, exh. G, H, I, J and K), but this is not sufficient.  This court's summary judgment procedures, which were attached to the November 18, 2019 preliminary pretrial conference order entered in this case, dkt. #32, instruct parties that "[a]ll facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact" and "[t]he court will not search the record for factual evidence. Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion."  Proc. to be Followed on Motions for Summ. Judg., at p. 2.  See also id. at p. 7 (describing procedure for responding party to propose additional findings of fact to defeat motion for summary judgment).  The Court of Appeals for the Seventh Circuit "has routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions."  Abraham v. Washington Group International, Inc., 766 F.3d 735, 737 (7th Cir. 2014).  See also Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 630-31 (7th Cir. 2010) (holding that  district court did not

err when it deemed defendant's proposed findings of fact admitted and refused to consider additional facts for plaintiff's failure to follow the local procedures on proposed findings of fact).

For these reasons, I find that plaintiff has failed to meet his burden on summary judgment with respect to his <u>Monell</u> claims.  Accordingly, defendants Oneida County and Oneida County Sheriff's Office are entitled to summary judgment with respect to plaintiff's § 1983 claims against them.

## D.   <u>State Law Claims</u>

Asserting state law claims, plaintiff contends that the defendant officers acted in a negligent manner and committed battery in using excessive force during his arrest, that defendants Oneida County and Oneida County Sheriff's Office are liable for their negligence and battery under the doctrine of respondeat superior, and that Oneida County is separately liable for its custom and practices that enabled the officers to act negligently and commit battery.  As an initial matter, I note that as with his <u>Monell</u> claims, plaintiff has failed to follow this court's procedures in presenting evidence to support his state law claims with respect to Oneida County's custom and practices.  Therefore, defendants are entitled to summary judgment with respect to the state law custom or practice claims against Oneida County.  I will address the parties' arguments with respect to negligence and battery separately.

1. Negligence

Under Wisconsin law, a negligence claim involves four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]." Hoida, Inc. v. M & I Midstate Bank, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17 (quoting Gritzner v. Michael R., 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906). Wisconsin law holds broadly (if unhelpfully) that "everyone has a duty of care to the whole world." Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 260, 580 N.W.2d 233, 238 (1998). This duty is "determined by ascertaining whether the defendant[s'] exercise of care foreseeably created an unreasonable risk to others." Shannon v. Shannon, 150 Wis. 2d 434, 443, 442 N.W.2d 25 (1989) (quoting Antoniewicz v. Reszcynski, 70 Wis. 2d 836, 857, 236 N.W.2d 1 (1975)). Additionally, this duty "encompasses what is reasonable according to facts and circumstances present in each individual case." Hoida, 2006 WI 69, ¶ 31.

Under the doctrine of respondeat superior, "a 'master' who has the requisite degree of control or right of control over the physical conduct of a 'servant' in the performance of the master's business will be held vicariously liable." Kerl v. Dennis Rasmussen, Inc., 2004 WI 86, ¶ 27, 273 Wis. 2d 106, 122-23, 682 N.W.2d 328, 336. The doctrine is most often applied in the context of an employer-employee relationship, e.g., James Cape & Sons Co. ex rel. Polsky v. Streu Construction Co., 2009 WI App 144, ¶ 9, 321 Wis. 2d 522, 529, 775 N.W.2d 277, 280, but that is not necessarily required if the defendant at issue otherwise has

the requisite degree of control.  Petzel v. Valley Orthopedics Ltd., 2009 WI App 106, ¶ 18, 320 Wis. 2d 621, 634, 770 N.W.2d 787, 793.

Considering plaintiff's version of the events, a reasonable jury could find that a reasonable officer would recognize that the level of force exerted by the officers in arresting plaintiff created an unreasonable risk of injury to plaintiff, causing him severe physical injuries.  In addition, because the officer defendants may be liable, the county also may be held liable under the theory of respondeat superior.  Figgs v. City of Milwaukee, 121 Wis.2d 44, 357 N.W.2d 548, 551 (Wis.1984) (holding "cities and other governmental units can be held liable in damages for the negligence of their employees under the doctrine of respondeat superior").  (I note that plaintiff seeks to hold both the county and the sheriff's office vicariously liable for the officers' alleged negligence.  Dkt. #67 at 35-36.  However, the Court of Appeals for the Seventh Circuit has held that a Wisconsin sheriff's department "is not a legal entity separable from the county government which it serves and is therefore, not subject to suit."  Whiting, 382 F.3d at 704 (citing Buchanan v. City of Kenosha, 57 F. Supp. 2d 675, 679 (E.D. Wis.1999) (holding county district attorney's office not suable entity).  Therefore, the court will regard defendant Oneida County Sheriff's Department as identical to defendant Oneida County for the purposes of vicarious liability regarding plaintiff's state law claims.)

In addition to challenging plaintiff's negligence claims on the merits, defendants contend that they are entitled to summary judgment because Wisconsin's discretionary immunity statute, Wis. Stat. § 893.80(4), bars suit against government subdivisions and

public employees "for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions."  Police decisions surrounding the arrest and detention of a suspect, including the use of force, are discretionary acts for which immunity is afforded under Wis. Stat. § 893.80(4).  Sheridan v. City of Janesville, 164 Wis. 2d 420, 427-28, 474 N.W.2d 799, 802 (Ct. App. 1991) (decisions regarding "whether [an arrestee] should be searched, handcuffed, [or] subjected to force during execution of the arrest" are decisions involving the exercise of discretion); Wilson v. City of Milwaukee, 138 F. Supp. 2d 1126, 1131 (E.D. Wis. 2001); Burnley v. Village of Brown Deer, No. 19-cv-364-jps, 2020 WL 620014, at *8 (E.D. Wis. Feb. 10, 2020).

Plaintiff argues that the exception for "malicious, willful and intentional" conduct permits his negligence claims to go forward.  Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶ 26, 235 Wis. 2d 409, 425, 611 N.W.2d 693, 700 (recognizing four exceptions to government immunity statute).  I agree with plaintiff, while acknowledging that there is some question in the case law whether the exception applies to negligence claims, for which intent is not an element.  At least one court has concluded that the exception does not apply to negligence claims, even if the plaintiff has alleged malicious and intentional conduct.  Wilson v. City of Milwaukee, 138 F. Supp. 2d 1126, 1133 (E.D. Wis. 2001).  See also Sheridan, 164 Wis. 2d at 428 (applying immunity to bar negligence claim allegedly based on malicious and intentional conduct, without discussing exception for malicious, willful and intentional acts).  However, other courts have concluded in more recent cases that this immunity exception can apply to negligence claims if there is evidence

that the conduct was malicious, willful and intentional.  <u>Gordon v. Cross</u>, No. 18-cv-176-wmc, dkt. #96 at 1; <u>Estate of Fiebrink by Cade v. Armor Correctional Health Services, Inc.</u>, No. 18-cv-832-jps, 2019 WL 1980625, at *13 (E.D. Wis. May 3, 2019); <u>Campbell v. Brown County</u>, 2006 WL 1207833, at *5 (E.D. Wis. May 2, 2006); <u>Brown v. City of Milwaukee</u>, 288 F. Supp. 2d 962, 984 (E.D. Wis. 2003).  I find these cases more persuasive because I agree that immunity attaches to particular conduct and should not depend on the legal theory on which a plaintiff relies.  <u>See</u> <u>C.L. v. Olson</u>, 143 Wis. 2d 701, 716, 422 N.W.2d 614, 619 (1988) ("[I]t is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from liability.").

"'Malice' means '[t]he intent, without justification or excuse, to commit a wrongful act.'"  <u>Brown</u>, 288 F. Supp. 2d at 984 (quoting <u>Black's Law Dictionary</u> 968 (7th ed. 1999)). "'Reckless disregard of the law or a person's legal rights' can also constitute malice."  <u>Id.</u>  In his amended complaint, plaintiff alleges that defendants acted intentionally, willfully and maliciously.  <u>E.g.</u>, dkt. #21 at ¶¶ 25, 60, 61.  A reasonable jury could find from plaintiff's version of events that the officers' use of force against plaintiff was not only negligent, but malicious, willful and intentional.  Therefore, I conclude that defendants are not entitled to summary judgment on the ground that discretionary immunity bars plaintiff's negligence claims against them.  However, to succeed on his negligence claims against defendants at trial, plaintiff must show that the discretionary immunity exception for "malicious, willful and intentional" conduct applies in his case.

2. Battery

Defendants contend that plaintiff's battery claims must be dismissed because he cited the statute for criminal battery, Wis. Stat. §§ 940.19, and not the intentional tort of battery in his amended complaint. Dkt. #21 at ¶ 48. However, the fact that plaintiff cited the wrong statute does not require dismissal of his claims. Johnson v. City of Shelby, Mississippi, 574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). Plaintiff's allegation that the officers intentionally inflicted "either bodily harm, substantial bodily harm, and/or great bodily harm," dkt. #21 at ¶ 48, was sufficient to put defendants on notice that plaintiff was suing them for the intentional tort of battery.

The elements of civil battery include: (1) the unlawful use of force or violence upon another; (2) the intentional direction of such force or violence at the person of another; and (3) the sustaining of bodily harm by the person against whom such force or violence is directed. Michelle T. by Sumpter v. Crozier, 173 Wis. 2d 681, 685, 495 N.W.2d 327, 329 (1993). Officers may be held liable for the intentional tort of battery if they use more force than necessary in making an arrest. Brown, 288 F. Supp. 2d at 984 (citing Kofler v. Florence, 216 Wis.2d 41, 45, 573 N .W.2d 568 (Ct. App. 1997)); Wirsing v. Krzeminski, 61 Wis.2d 513, 213 N.W.2d 37 (1973); Schulze v. Kleeber, 10 Wis.2d 540, 545, 103

25

N.W.2d 560, 564 (1960).  Plaintiff has presented evidence that the defendants used enough force to cause him to suffer physical injury.  In addition, considering plaintiff's version of events, a reasonable jury could conclude that the officers used more force than necessary and that their conduct was intentional.

However, plaintiff may not sue the county or sheriff's office under the theory of respondeat superior.  Governmental entities are immune from liability for the intentional torts of their officers.  Wis. Stat. § 893.80(4); Voie v. Flood, 589 F. Supp. 746, 750 (W.D. Wis. 1984).  Because battery is an intentional tort, Baranowski v. City of Milwaukee, 70 Wis. 2d 684, 688, 235 N.W.2d 279, 281 (1975); Salerno v. City of Racine, 62 Wis. 2d 243, 245, 214 N.W.2d 446, 447 (1974), defendants Oneida County and Oneida County Sheriff's Office are entitled to summary judgment with respect to plaintiff's respondeat superior claims against them.

### E.  Punitive Damages

Repeating their contention that plaintiff has not presented any evidence that the officers' alleged misconduct was intentional, willful or malicious, defendants make a cursory argument that plaintiff is not entitled to an award of punitive damages under § 1983 and he is subject to the $50,000 damages cap in Wis. Stat. § 893.80(3).  As explained above, I conclude that a reasonable jury could conclude from plaintiff's version of events that the officers' use of force on plaintiff was malicious, willful and intentional.

Wisconsin caps damages for unlawful acts, other than intentional torts, committed

by government agencies or their employees.  Petkus v. Richland County, Wisconsin, 767 F.3d 647, 653 (7th Cir. 2014).  Therefore the cap is applicable to plaintiff's state law negligence claim.  However, as plaintiff points out, the court of appeals made clear in Petkus that a $133,840 damage award for the county's negligence "was the indivisible consequence of the violation of the Fourth Amendment and the violation of state law."  Id. ("Had there been no violation of state law but only of the Fourth Amendment, the damage to Petkus would have been the same, and likewise had there been a violation only of state law.").  Therefore, to the extent that defendants are arguing that the statutory cap limits the damages for all of their claims to $50,000, they are incorrect.


ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Oneida County, Oneida County Sheriff's Office, Stetson Grant, Christopher Coniglio, Timothy Johnson and Michael Baran, dkt. #46, is GRANTED with respect to plaintiff Mark Geboy's federal claims and state law battery claims against Oneida County and Oneida County Sheriff's Office, and those claims are DISMISSED.  The motion is DENIED in all other respects.

Entered this 17th day of December, 2020.


BY THE COURT:
/s/
_____
BARBARA B. CRABB
District Judge

27